135 N.J. Super. 89 (1975)
342 A.2d 596
STATE OF NEW JERSEY, PLAINTIFF,
v.
RAYMOND BRAEUNIG, DEFENDANT.
Superior Court of New Jersey, Law Division  (Criminal).
June 16, 1975.
*90 Mr. Solomon Forman, First Assistant Prosecutor, for the State (Mr. Richard J. Williams, Atlantic County Prosecutor, attorney).
Mr. Robert J. Moran, Deputy Public Defender, for the defendant (Mr. Stanley C. Van Ness, Public Defender, attorney).
HORN, A.J.S.C.
The issue presented in this proceeding appears to be a novel one in this State. Defendant seeks relief by way of credit on his sentence after conviction for *91 the time he was on probation after sentence was imposed but during a stay thereof pending appeal.
He instituted these proceedings by filing a "notice of motion to correct sentence pursuant to N.J.S.A. 2A:168-1-4." Determining that the proceeding was more appropriately one for post-conviction relief, I considered it as if he had filed a petition for post-conviction relief pursuant to R. 3:22-1 et seq.
At the hearing it was disclosed that there is substantially no dispute as to the salient facts.
In July 1971 defendant Braeunig was convicted after a jury trial of conspiracy to violate the gambling laws and also of substantive gambling offenses. In August 1971 he was sentenced in the aggregate to two to three years at State Prison, Trenton, a fine of $1,000, costs and one year's probation following his release from custody.
Upon announcing his intention to appeal, he remained at liberty by complying with an order for increased bail. Appeal to the Appellate Division ensued.
None of the persons who participated in bringing about what appears in the following excerpt from the presentence report prepared for resentencing of defendant, which took place July 3, 1973, has any personal recollection of the events described therein. Nor is there any doubt as to the authenticity of the excerpt, which reads as follows:
On September 14, 1971, the Honorable Herbert Horn directed the subject, through his counsel and the probation office, that the defendant was instructed to report for his probation term and to pay his total fine of $1,000., and $650. costs during the period of that probation and during the time the appeal was being processed.
The defendant started reporting to the Probation Office as directed and on August 27, 1972, his probation was extended for one year to enable him to complete the payment on his fines and costs totalling $1650.00. On August 27, 1973 subject's probation was terminated with improvement.
The Appellate Division remanded the matter for several purposes, including resentencing, to eliminate certain doubts *92 which arose respecting same and to vacate the imposition of the costs. State v. Braeunig, 122 N.J. Super. 319 (App. Div. 1973).
Following the remand substantially the same sentence was imposed, i.e., incarceration at State Prison for a minimum term of two years and a maximum term of three years, a fine of $1,000 and probation for one year following his release from custody. Imposition of costs was eliminated. Another appeal resulted in affirmance by the Appellate Division in an unreported opinion released August 1, 1974, and denial of certification by the New Jersey Supreme Court. State v. Braeunig, 66 N.J. 325 (1974).
Since apparently, according to the above-quoted portion of the presentence report, defendant conformed to an order for probation for 23 months, representing substantially the interval between the initial imposition of sentence and the date of resentence, defendant contends, first, that he is entitled to an order relieving him from the probationary term of 12 months to follow release from incarceration, which was part of the initial sentence and resentence; second, he is entitled to credit on the custodial portion of his sentence equivalent to th 11-months' probation to which he was subjected beyond the initial 12 months.
I disagree and accordingly deny his application. Not having actual recollection, I can only surmise the reason for the directive to the probation department. When sentence was imposed initially, defendant's activities disclosed at the trial were then fresh in mind. These activities were sufficient to impel a conviction by a jury that defendant was the dominating figure in a bookmaking conspiracy. He had set up the scheme and recruited his aides, consisting of his codefendants, who were indicted and convicted with him. His telephone conversations reproduced at the trial clearly indicated that in his mind he had little regard for the law or its enforcement. This probably led me to believe that some type of supervision over him should be exercised in order to prevent his engaging in illegal activity pending appeal.
*93 It is definite that the supervision or probation was never intended to be a substitute, partial or otherwise, for the sentence which had been imposed only about 18 days earlier and which was awaiting execution. It is also certain that although defendant was represented by counsel, the issue was never raised until this proceeding was commenced in December 1974.[*]
Probation is commonly believed to be regulated and authorized by our statute, N.J.S.A. 2A:168-1 et seq. With certain exceptions the statute authorizes probation "after conviction or after a plea of guilty or non vult for any crime or offense * * *." The court mandates the conditions of probation and a written copy of same is delivered to defendant. N.J.S.A. 2A:168-2; R. 3:21-7.
Post-conviction probation is said to differ from imprisonment in that it seeks to achieve the rehabilitation of persons convicted of crime by returning them to society during a period of supervision, rather than sending them into the unnatural and, all too often, socially unhealthful atmosphere of prisons and reformatories. State v. Moretti, 50 N.J. Super. 223 (App. Div. 1958).
Post-conviction probation preceded the above-mentioned statutory enactment as a matter of common law. Adamo v. McCorkle, 13 N.J. 561 (1953), and authorities cited therein. Our first statute relating to probation, and the statutory precursor of N.J.S.A. 2A:168-1 et seq., was adopted in 1900. L. 1900, c. 102 (repealed L. 1906, c. 74). But in New Jersey suspension of sentence during good behavior was a recognized practice long before 1900 as an inherent judicial prerogative. Adamo v. McCorkle, supra at 564. See also State v. Carter, 64 N.J. 382, 390 (1974).
*94 It follows that pre-conviction probation likewise is within the inherent and implied judicial authority. United States v. Smith, 444 F.2d 61-62 (8 Cir.1971), cert. den. 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1974). The court there said, "[W]e think the course of the common law in England and the development of the common law and statutory law in the United States demonstrate that the courts have the inherent power to place restrictive conditions upon the granting of bail." The Federal Bail Reform Act (1966), 18 U.S.C.A. 3146 et seq., authorizes federal courts to place an accused in the custody of a designated person or organization agreeing to supervise him, or to place restrictions on his travel, associations or place of abode, pending trial.
American Bar Ass'n, Standards Relating to Pretrial Release (1968), recommends the same type of restrictions and includes the placing of an accused under the supervision of a probation officer or other public official. § 5.2(b)(ii). See also R. 3:26-1(a).
It is certainly a reasonable conclusion that, if to insure the appearance of an accused before trial, the court may place him under probationary supervision without subsequent credit on the sentence, it has such authority after conviction pending appeal without credit.
Commonly, in this and other jurisdictions, courts suspend custodial sentences and place defendants on probation for a definite term. For violation of the terms of their probation they may be resentenced to custodial punishment. But they are not entitled to credit on any subsequent sentence for the earlier terms of probation. State v. Fisher, 115 N.J. Super. 373 (App. Div. 1971). The same is true in parole cases. State v. Allison, 81 N.J. Super. 390 (App. Div. 1963).
The fact that it is legal and is common practice, as illustrated by such cases as State v. Fisher, supra; State v. Pascal, 133 N.J.L. 528 (Sup. Ct. 1946); Id. 1 N.J. 261 (1949), to impose the same or even greater custodial sentence than that which was suspended without any credit for probationary *95 time indicates that defendants are not entitled to credit either on account of the term of a custodial sentence or upon an additional probationary term.
As stated by the Appellate Division in Adamo v. McCorkle, supra, 26 N.J. Super. 562 (App. Div. 1953), rev. on other grounds 13 N.J. 561 (1953), probation is not a sentence in itself, but rather is a device that, among other things, designates a period during which the imposition of the execution of the sentence is suspended and the convicted person is permitted to continue at large upon stated conditions, upon the violation of which he makes himself liable to imprisonment.
R. 3:21-8 states that a defendant shall receive credit on the term of a custodial sentence for any time he has served in custody in jail or in a state hospital between his arrest and imposition of sentence. This rule, by its failure to even refer to probation, impliedly confirms that it was never even considered as a basis for credit in any situation where it occurs before execution of sentence.
Torres v. Wagner, 121 N.J. Super. 457 (App. Div. 1972), held that a statute (N.J.S.A. 30:4-140) which specifically excluded time credits for time served in custody between arrest and imposition of sentence from being calculated with respect to credits against maximum and minimum terms of the sentence of persons committed to state correctional institutions, was free of constitutional defect.
What was said in State v. Lee, 60 N.J. 53, 58 (1972), is pertinent. In that case the court held that, pursuant to R. 3:21-8, time served in a state hospital between arrest and imposition of sentence was to be credited upon an indeterminate sentence imposed on defendant under the Sex Offender Act, N.J.S.A. 2A:164-3 et seq. The court, in reference to R. 3:21-8, said: "Where, as here, the defendant was not placed on probation (N.J.S.A. 2A:164-6(a)) but was committed to an institution (N.J.S.A. 2A:164-6(b)), his sentence under the Act was clearly a custodial one which comes within the letter as well as the purpose of the rule."
*96 The adoption of R. 3:21-8 was probably influenced by State v. Benes, 16 N.J. 389 (1954), in which the court held that time spent in a state hospital by defendant for purposes of presentence examination was not to be credited against his sentence under then R.R. 3:7-10(g). But regardless of whether this is so or not it is a clear holding that, except for a statute or rule otherwise requiring same, even custodial retention will not be credited upon a custodial sentence subsequently imposed.
As with parole, probation may likewise be considered as an act of favor on the part of the State, not a matter of right on the part of the prisoner. State ex rel. Kincaid v. State Parole Board, 53 N.J. Super. 526 (App. Div. 1959).
Pretrial probation may be said to be due to some demand of the law other than that based on a criminal conviction. It is a necessary part of the process in the criminal procedures system, as much for the benefit of a defendant as for the facility of the system. It need not be considered as part of the punishment which the law exacts. State v. Kennedy, 106 Ariz. 190, 192, 472 P.2d 59, 61 (Sup. Ct. 1970).
Our own cases and other authorities as already referred to hereinabove indicate that although probation may be considered as painful and burdensome  as part of a condition for withholding the execution of the sentence pending appeal  a defendant is not entitled to any credit on either the subsequent term of incarceration or probation. It is more appropriately a "demand of the law other than that based upon his conviction." State v. Kennedy, supra, 106 Ariz. at 193, 472 P.2d at 61.
In the instant case, realistically, there was a quid pro quo in that Braeunig remained at large and at the same time the court was satisfied with respect to the payment of the fine and costs (viewing the situation as of September 1971) and his eventual appearance when and if his appeal was futile.
For these reasons I deny defendant's application.
NOTES
[*] Since September 14, 1971 defendant appealed twice to the Appellate Division, applied for certification to the Supreme Court, appeared for resentencing in July 1973, appeared at hearings before me June 18, 1973 and June 22, 1973, and applied for reconsideration of his sentence. No question was raised by him or his counsel as to the present issue at any time until December 1974.